MILBANK, TWEED, HADLEY & McCLOY LLP
Mark C. Scarsi (SBN 183926)
Chris L. Holm (SBN 249388)
601 South Figueroa Street, 30th Floor
Los Angeles, CA 90017-5735
Telephone: (213) 892-4000
Facsimile: (212) 822-5796
F-N-wg@milbank.com

Attorneys for Defendants,
FUJITSU LIMITED and
FUJITSU MICROELECTRONICS AMERICA, INC.

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION**

| | |
|---|---|
| KLA-Tencor Corporation,<br><br>*Plaintiff*,<br><br>-against-<br><br>FUJITSU LIMITED and<br>FUJITSU MICROELECTRONICS<br>AMERICA, INC.<br><br>*Defendants*. | Case No.   4:08-CV-01254 (CW)<br><br>**FUJITSU'S MOTION TO DISMISS KLA'S COMPLAINT FOR DECLARATORY JUDGMENT AND, IN THE ALTERNATIVE, FOR A MORE DEFINITE STATEMENT**<br><br>Hon. Claudia A. Wilken<br><br>Hearing Date:    August 7, 2008<br>Time:                  2:00 p.m.<br>Location:            Courtroom 2, 4th Fl. |

Defendants Fujitsu Limited and Fujitsu Microelectronics America, Inc. (collectively "Fujitsu") hereby provide notice that on Thursday, August 7, 2008 at 2:00 p.m. in Courtroom 2, 4th Floor, before the Honorable Claudia A. Wilken, Fujitsu will move to dismiss Plaintiff KLA-Tencor Corp.'s ("KLA") declaratory judgment complaint with prejudice.

More particularly, Fujitsu asks the Court to dismiss KLA's complaint for declaratory judgment filed on March 4, 2008 (08-cv-01254 Dkt. No. 1), and its first amended complaint for declaratory judgment filed on June 30, 2008 (08-cv-01254 Dkt. No. 14) (collectively, "Complaint"), which seeks a declaratory judgment of, *inter alia*, non-infringement of Fujitsu's U.S. Patent No. 6,104,486 ("the '486 patent"). In the alternative, Fujitsu's moves for a more definite statement under Rule 12(e).

This Motion is accompanied by the supporting Declaration of Frank A. Bruno, with exhibits, and a Proposed Order, and is based on the following Memorandum of Points and Authorities in support, the pleadings of record in this case, and any evidence that may be offered at the hearing.

**Table of Contents**

Table of Contents ........................................................................................................................ 1

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT ....................................... 1

I. Introduction ........................................................................................................................ 1

II. Statement of Facts .............................................................................................................. 1

    A. History of the Case ................................................................................................ 1

    B. Nanya's Products are Made Using KLA's Device in a Process that Infringes the '486 Patent ............................................................................................................. 3

    C. Fujitsu Has Never Accused KLA of Infringing the '486 Patent ........................... 3

III. Argument ............................................................................................................................ 4

    A. To Establish DJ Jurisdiction, a DJ Plaintiff Must Identify the Potential Infringement and Establish That It Has Taken Significant, Concrete Steps to Conduct Such Potential Infringement .................................................................. 4

    B. KLA's Complaint Fails to Identify the Potential Infringements for which it Seeks Declaratory Judgment ................................................................................. 6

        1. KLA's Complaint Should Be Dismissed for Failure to Identify the Potential Infringements ............................................................................. 6

        2. In The Alternative, KLA Should Be Required to Identify the Potential Infringements in a More Definite Statement ............................................ 8

    C. KLA Has Not Engaged in, or Prepared to Engage in, Any Activity Alleged to Be an Infringement ..................................................................................................... 9

        1. KLA Has Not Alleged that Its Activities Constitute a Alleged Direct Infringement of the '486 Patent ................................................................ 9

        2. KLA Has Not Alleged that Its Activities Constitute an Alleged Contributory Infringement of the '486 Patent ....................................... 10

        3. KLA Has Not Alleged that Its Activities Could Constitute an Alleged Infringement of the '486 Patent by Inducement ..................................... 10

        4. Because KLA Has Not Engaged in, or Prepared to Engage in, Any Activity Alleged to Be an Infringement, Its Declaratory Judgment Claim Must Be Dismissed ................................................................................. 11

        5. In the Alternative, KLA Should Be Required To Identify the Potential Basis for Liability for Each Potentially Infringing Product ..................... 11

    D. Even If Dismissal Is Not Mandatory, the Court Should Exercise Its Discretion to Dismiss KLA's DJ Complaint ............................................................................. 12

IV. Conclusion ........................................................................................................................ 13

**CASES**

*ACCO Brands, Inc. v. ABA Locks Mfrs. Co., Ltd.*,
    501 F.3d 1307 (Fed. Cir. 2007)................................................................................................ 10

*Aetna Life Ins. Co. of Hartford Conn. v. Haworth*,
    300 U.S. 227 (1937).................................................................................................................. 4

*American States Ins. Co. v. Kearns*,
    15 F.3d 142 (9th Cir. 1994) .................................................................................................... 13

*AquaTex Indus., Inc. v. Techniche Solutions*,
    419 F.3d 1374 (Fed. Cir. 2005)............................................................................................... 10

*Brillhart v. Excess Ins. Co. of America*,
    316 U.S. 491 (1942)................................................................................................................ 12

*Cardinal Chem. Co. v. Morton Int'l, Inc.*,
    508 U.S. 83 (1993).............................................................................................................. 4, 12

*Cat Tech LLC v. TubeMaster, Inc.*,
    No. 2007-1443, 2008 WL 2188049 (Fed. Cir. May 28, 2008) ..................................... 4, 5, 11

*Comp. Docking Station Corp. v. Dell Inc.*,
    No. 06-C-0032-C, 2007 WL 5117465 (W.D. Wis Jan. 11, 2007) ........................................... 9

*EMC Corp. v. Norand Corp.*,
    89 F.3d 807 (Fed. Cir. 1996)................................................................................................... 12

*Hewitt v. Helms*,
    482 U.S. 755 (1987)................................................................................................................ 12

*Hewlett-Packard Co. v. Intergraph Corp.*,
    No. C 03-2517, 2003 WL 23884794 (N.D. Cal. 2003) ........................................................ 8, 9

*Laitram Corp. v. Cambridge Wire Cloth Co.*,
    919 F.2d 1579 (Fed. Cir. 1990)................................................................................................. 7

*MedImmune, Inc. v. Genentech, Inc.*,
    549 U.S. 118 (2007).................................................................................................................. 5

*Mendenhall v. Cedarapids, Inc.*,
    5 F.3d 1557 (Fed. Cir. 1993).................................................................................................... 9

*Minn. Mining & Mfg. Co. v. Chemque, Inc.*,
    303 F.3d 1294 (Fed. Cir. 2002)............................................................................................... 10

*Nanya Tech. Corp. v. Fujitsu Ltd.*,
    No. 06-00025, 2007 WL 1845556 (D. Guam June 27, 2007) (Guam Dkt. No. 302) ............. 2

*NTP, Inc. v. Research In Motion, LTD.*,
    418 F.3d 1282 (Fed Cir. 2005).................................................................................................. 9

*QRG, Ltd. v. Nartron Corp.*,
    2007 WL 2234511 (M.D. Pa. 2007) ............................................................................... 6, 7, 8

*SanDisk Corp. v. STMicroelectronics, Inc.*,
    480 F.3d 1372 (Fed. Cir. 2007)............................................................................................... 12

*Serco Servs. Co., L.P. v. Kelley Co., Inc.*,
    51 F.3d 1037 (Fed. Cir. 1995)................................................................................................. 12

*Sony Elecs., Inc. v. Guardian Media Techs., Ltd.*,
    497 F.3d 1271 (Fed. Cir. 2007)............................................................................................... 12

*Sony Electronics, Inc. v. Guardian Media Technologies, Ltd.*,
   497 F.3d 1271 (Fed. Cir. 2007) .......................................................................................... 5

*Wilton v. Seven Falls Co.*,
   515 U.S. 277 (1995) ......................................................................................................... 12

**STATUTES**

35 U.S.C. § 271(a) ................................................................................................... 1, 10, 11
35 U.S.C. § 271(b) ................................................................................................... 1, 10, 11
35 U.S.C. § 271(c) ......................................................................................................... 1, 10
35 U.S.C. § 271(g) ......................................................................................................... 9, 11
Rule 12(e) ............................................................................................................................ i, 8

**OTHER AUTHORITIES**

U.S. Const. Art. III, § 2 ........................................................................................................ 4

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**

## I.  INTRODUCTION

KLA seeks a declaratory judgment ("DJ") that, *inter alia*, it does not infringe Fujitsu's '486 patent, which covers a method for measuring the "lateral size" of a semiconductor device.  (Bruno Decl. Ex. A).   KLA is not a manufacturer of semiconductors but is, instead, a supplier of measurement tools that can be used, according to KLA, to measure a wide variety of things.   Although Fujitsu has asserted the '486 patent against one of KLA's customers, Fujitsu has never claimed that KLA itself is an infringer, that all users of KLA's measurement tools are infringers, or that sales of KLA's tools constitute an infringement.   In fact, KLA has not identified the conduct or activity for which it seeks a declaratory judgment of non-infringement.

The law is clear that a DJ plaintiff must identify the potential infringements of the patent-in-suit for which declaratory judgment is sought, and must allege that the DJ plaintiff is itself engaged in, or is preparing to engage in, activity so as to create a controversy for direct infringement under 35 U.S.C. § 271(a) or indirect infringement under 35 U.S.C. § 271(b) or (c).   KLA does not identify its potential infringements or allege such activities.   Accordingly, KLA's declaratory judgment claims must be dismissed.   Alternatively, KLA should be required to provide a more definite statement under Rule 12(e) identifying all products for which it seeks a declaratory judgment of non-infringement.

## II.  STATEMENT OF FACTS

### A.  History of the Case

KLA filed this action apparently in reaction to another litigation pending in this district (*Fujitsu v. Nanya*, No. 06-cv-06613).   Consequently, it may be helpful to briefly recite the history of that case here.   On September 13, 2006, Nanya filed suit in the Guam District Court, seeking *inter alia* declaratory judgments of invalidity, noninfringement, and unenforceability for a number of Fujitsu U.S. patents.   On October 24, 2006, Fujitsu filed its complaint against Nanya in this Court asserting *inter alia* the '486 patent against certain Nanya products.   On November 17, 2006, Nanya amended its Guam complaint to include the '486 patent.   On February 2, 2007, this Court ordered Fujitsu and

1  Nanya to proceed with discovery in California.[1]  Transcript of NDC Case Management Conference, at 6:13-7:2, 18:23-19:4, 26:4.  The Court set the close of fact discovery for February 1, 2008. *Id.* at 33:8. *See also* Case Management Order, Feb. 7, 2007 (06-cv-06613 Dkt. No. 73) ("Completion of Fact Discovery: (02/01/08)").  The deadline was later extended by two months until April 18, 2008.  (06-cv-06613 Dkt. No. 172).

One year after discovery commenced, and well over a year after Fujitsu asserted the '486 patent, Nanya filed a third-party complaint against KLA on January 23, 2008, seeking indemnification for Fujitsu's patent infringement claims relating to the '486 patent.  (06-cv-06613 Dkt. No. 199). KLA sought to sever the claims relating to itself or alternatively to further extend the schedule by six months, which Fujitsu opposed.  Joint Proposed Case Management Plan, Feb. 26, 2008, at 3 (06-cv-06613 Dkt. No. 235).  On March 11, 2008, KLA filed an answer, denying it had any responsibility to defend Nanya from Fujitsu's claims and asserting that the '486 patent is invalid and not infringed by any KLA product.  (06-cv-06613 Dkt No. 256).  On March 4, 2008, KLA filed a separate complaint against Fujitsu seeking declaratory judgment of noninfringement and invalidity of the '486 patent. (08-cv-01254 Dkt. No. 1).  On March 14, 2008, the Court ordered that KLA's suit against Fujitsu was related to the consolidated Fujitsu/Nanya action, placed the cases on the same schedule, and extended the schedule six months (over Fujitsu's opposition) to accommodate KLA.  (08-cv-01254 Dkt. Nos. 5, 5-2).

At KLA's request, the parties negotiated and submitted an addendum to the protective order on April 25, which the Court entered on April 30, 2008.  (08-cv-01254 Dkt. No. 9, 10).  Meanwhile Fujitsu served discovery requests on April 24.  *See* Fujitsu's First Set of Requests for Production to KLA (Nos. 1-14) (Ex. B).  Even though these requests were narrowly tailored, e.g., to activities of Qimonda, Infineon and Inotera, who developed and currently manufacture relevant Nanya Accused Products for importation and sale by Nanya, KLA has refused to produce documents relating to *any* third parties, instead taking the position that it is only obligated to produce documents relating to

---

[1] The Guam action was transferred to this Court on June 27, 2007.  *Nanya Tech. Corp. v. Fujitsu Ltd.*, No. 06-00025, 2007 WL 1845556, *5 (D. Guam June 27, 2007) (Guam Dkt. No. 302).  On August 1, 2007, this Court consolidated Fujitsu's Northern District of California case and Nanya's Guam case. (*See* Order, 06-cv-06613 Dkt. No. 127).

1  ellipsometers marketed and sold to Nanya.  KLA further argued that because a Rule 26(f) conference
2  and not been held in the DJ Case, Fujitsu is not yet entitled to any discovery in the DJ Case.  KLA's
3  strained position is documented and described in more detail in Fujitsu's co-pending motion to
4  consolidate.  (06-cv-06613 Dkt. No. 322, at 2).  Lead counsel for the parties met and conferred on
5  June 27, 2008, and Fujitsu is preparing a motion to compel.

**B.  Nanya's Products are Made Using KLA's Device in a Process that Infringes the '486 Patent**

Nanya sells dynamic random access memory ("DRAM") such as may be found in personal computers.  On July 2, 2005, Nanya and its then-partner, Infineon Technologies AG, announced the joint development of DRAM based on new, 90 nanometer ("nm") feature-size technology, which was substantially smaller than the devices previously manufactured, such as those with 140 nm feature sizes.  ("Infineon, Nanya begin 90 nm 300 mm  Volume Production", Electronic News, June 2, 2005, Bruno Decl. Ex. C).  Nanya later began selling DRAM based on this 90 nm technology.

During the manufacture of such DRAM, the manufacturer will engage in certain "quality assurance" activities, including measuring dimensions on sample products to ensure that the dimensions are within expected ranges.  Traditional methods of measuring such dimensions that worked well on larger feature size technology, such as 140 nm DRAM, were less effective on the newer, smaller 90 nm DRAM.  (*See* T. Hingst et al., *Spectroscopic Ellipsometry based Scatterometry enabling 193 nm Litho and Etch process control for the 110 nm technology node and beyond,* 5038 PROC. OF SPIE, 274-85 (2003), Bruno Decl. Ex. D).  The '486 patent discloses and claims an improved measurement method, called spectroscopic ellipsometry based scatterometry ("ellipsometry"), that uses light waves to more effectively measure a particular feature of a semiconductor device, *i.e.*, the "lateral size" of features on the semiconductor substrate.  ('486 Patent, col. 13, line 64, Bruno Decl. Ex. A). At least Nanya's 90 nm DRAM is made using the '486 patented method.

**C.  Fujitsu Has Never Accused KLA of Infringing the '486 Patent**

KLA's SpectraCD device includes an ellipsometer that uses properties of light waves to measure very small features, such as the roughness and thickness of layers of film and properties of flat-panel display liquid crystals.  The claims of the '486 patent cover specific methods of using an

1  ellipsometer to measure the "lateral size" of structures formed on the surfaces of semiconductors.  As
2  noted above, Fujitsu has asserted that Nanya (and/or Inotera) uses KLA's SpectraCD (or equivalent
3  machine) during manufacture of DRAM as part of a process that uses the '486 patented method.
4  However, Fujitsu has <u>never</u> asserted that KLA's sale of the SpectraCD device itself infringes the '486
5  patent.  Fujitsu has <u>never</u> sought a license from KLA for the '486 patent or otherwise accused KLA of
6  infringement.

Fujitsu's understanding, and indeed KLA's assertion, is that KLA's SpectraCD device may be used in ways that do not infringe the '486 patent.[2]  For example, KLA asserts that the SpectraCD may be used to measure the thickness of thin-films used to manufacture semiconductors, as opposed to the specific "lateral size" measurement required by the '486 patent claims.  (*See* SpectraCD Product Page, Bruno Decl. Ex. E).  Additional examples of non-infringing uses of the SpectraCD include at least the following: measuring flat-panel display liquid crystal properties; measuring the optical properties and layer thickness of polymers; measuring film index, absorption constant, and thickness of optical coatings in semiconductors; and analyzing doping content, roughness, and porosity of dielectric films. (*See* Ellipsometry Papers, Bruno Decl. Ex. F - Ex. I).

**III.   ARGUMENT**

    **A.   To Establish DJ Jurisdiction, a DJ Plaintiff Must Identify the Potential Infringement and Establish That It Has Taken Significant, Concrete Steps to Conduct Such Potential Infringement**

Article III of the Constitution limits the availability of declaratory relief to "the adjudication of 'Cases' or 'Controversies.'"  *Cat Tech LLC v. TubeMaster, Inc.*, No. 2007-1443, 2008 WL 2188049, at *5 (Fed. Cir. May 28, 2008) (quoting U.S. Const. Art. III, § 2).  This requirement restricts courts from hearing "a difference or dispute of a hypothetical or abstract character" or a claim "that is academic or moot."  *Id.* quoting (*Aetna Life Ins. Co. of Hartford Conn. v. Haworth*, 300 U.S. 227, 240 (1937)).  A party seeking a declaratory judgment has the burden of establishing the existence of an actual case or controversy.  *Cardinal Chem. Co. v. Morton Int'l, Inc.*, 508 U.S. 83, 95 (1993) (citing *Aetna Life Ins. Co. of Hartford Conn. v. Haworth*, 300 U.S. 227, 240-241 (1937)).

---

[2] KLA has so far refused to provide any discovery concerning its products, and, thus, Fujitsu's statements herein concerning such products are based solely on its present understanding.

1    When deciding whether to hear a declaratory judgment suit, the Federal Circuit traditionally
2    applied a "two-prong test". *Cat Tech* at *6 (internal citations omitted).   The Federal Circuit has
3    recently explained that one prong focused on the DJ plaintiff's potential infringement and the other
4    focused on the patentee's conduct:

> One prong of the test examined whether the declaratory judgment plaintiff actually produced or was prepared to produce an allegedly infringing product. The other prong looked to see whether conduct by the patentee had created on the part of the declaratory judgment plaintiff a reasonable apprehension that the patentee would file suit if the allegedly infringing activity continued.

*Sony Electronics, Inc. v. Guardian Media Technologies, Ltd.,* 497 F.3d 1271, 1283 (Fed. Cir. 2007).

In *MedImmune*, the Supreme Court modified the prong relating to the patentee's conduct to eliminate the need to show that the patentee created a "reasonable apprehension of imminent suit." The Supreme Court instructed courts to determine "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Cat Tech* at *6 (citing *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (internal quotations omitted)).   Following *MedImmune*, the Federal Circuit evaluated several cases that hinged on the prong relating to the patentee's conduct (e.g., threats to sue for infringement, offers and refusals to license the patent, covenants not to sue, etc.).

Just recently, in *Cat Tech*, the Federal Circuit noted that after *MedImmune*, "several opinions of this court have reshaped the contours of the first prong of our declaratory judgment jurisprudence [relating to the patentee's conduct]. ... The present dispute, however, involves the second rather than the first prong of our declaratory judgment test [*i.e.*, it involves the prong relating to the DJ plaintiff's potential infringement].   This court has yet to fully consider *MedImmune*'s impact on this prong." *Cat Tech*, No. 2007-1443, 2008 WL 2188049, at *6.   Upon evaluating *MedImmune* and its own precedent, the Federal Circuit concluded that this latter prong, focusing on "whether the declaratory judgment plaintiff has engaged in 'meaningful preparation to conduct potentially infringing activity remains an <u>important element</u> … <u>which must be considered</u>". *Id.* at *7 (emphasis added).

Accordingly, the declaratory judgment plaintiff must still identify the potential infringement and show that it has taken significant, concrete steps to conduct such activity.

**B.   KLA's Complaint Fails to Identify the Potential Infringements for which it Seeks Declaratory Judgment**

   **1.   KLA's Complaint Should Be Dismissed for Failure to Identify the Potential Infringements**

KLA's Complaint fails to identify a single accused infringing product or process.  Instead, KLA broadly alleges that "Fujitsu has asserted that the use of KLA-Tencor products infringes, constitutes contributory infringement of, or induces to infringe claims of the '486 patent and has threatened to pursue or pursued legal action for infringement of claims of the '486 patent for one or more KLA-Tencor products."  KLA's Complaint at ¶ 13.  As a result, KLA's DJ complaint fails to satisfy the prong of the Federal Circuit's declaratory judgment test requiring the DJ plaintiff to specifically identify the potential infringements.

In *QRG, Ltd. v. Nartron Corp.*, 2007 WL 2234511 (M.D. Pa. 2007), a plaintiff sued for declaratory judgment of noninfringement regarding certain of its product lines.  The court initially denied a motion to dismiss for lack of DJ jurisdiction.  However, the parties were unable to agree on how to limit the scope of discovery because although the DJ plaintiff had identified product lines, it failed to identify specific products for which it was seeking a DJ of non-infringement.  As a result, the court *sua sponte* revisited the issue of subject matter jurisdiction.  The court found that the DJ plaintiff failed to identify specific potential infringements and that the mere identification of a product line was too broad and vague to show an actual case or controversy sufficient to support declaratory judgment jurisdiction.

> The parties' inability to overcome this [discovery] impasse on their own has compelled the court to undertake a more searching review. In doing so, the court revisits its earlier consideration of the requirements of Article III and the Declaratory Judgment Act. The court now finds that it lacks subject matter jurisdiction over all but a handful of claims that involve products specifically identified throughout the course of the litigation.  Accordingly, the court will dismiss all of QRG's claims that are based on nothing more than broad identifications of product lines.

*QRG, Ltd. v. Nartron Corp.*, 2007 WL 2234511, *1 (M.D. Pa. 2007).   The court therefore dismissed the declaratory judgment claim for those patents and product lines deemed too broad.   The court also held that the patentee's infringement counterclaim did not meet the actual case or controversy requirement to the extent it similarly identified too broad of a product line.

In reaching its conclusion, the court discussed the Federal Circuit's declaratory judgment test and then focused on the prong relating to the DJ plaintiff's potential infringement. In doing so, the court emphasized the importance of identifying specific products for which a declaratory judgment of non-infringement is sought, as opposed to vaguely referring to potential infringements such as entire product lines:

> The inquiry regarding whether an actual controversy exists in a suit seeking a declaration of patent non-infringement is two-fold. *Id*.
>
> There must be both (1) an explicit threat or other action by the patentee [that] creates a reasonable apprehension on the part of the declaratory judgment plaintiff that it will face an infringement suit, and (2) present activity by the declaratory judgment plaintiff [that] could constitute infringement, or concrete steps taken with the intent to conduct such activity.
>
> *Id*. In order to meet the requirements of Article III and the patent laws, a party must identify a specific product as opposed to an entire product line.
>
> ... [T]he court now finds that QRG's broad identification of the QProx, QTouch, QSlide, QWheel, QMatrix, and QField product lines, without more, fails to establish a justiciable case or controversy.

*QRG, Ltd. v. Nartron Corp*., 2007 WL 2234511, *3 (M.D. Pa. 2007). *Cf. Laitram Corp. v. Cambridge Wire Cloth Co.,* 919 F.2d 1579, 1583 (Fed. Cir. 1990) (direct infringement case, stating: "the parties have identified no specific product made, used, or sold by CWC and thus subject to a charge of infringement.... On that basis, there was no actual case or definite and concrete controversy over which the district court might have exercised jurisdiction.").

Similarly here, KLA has not identified any specific potential infringements for which it is seeking a declaratory judgment of non-infringement. Its DJ complaint does not mention even one semiconductor product made using the method of the '486 patent. Instead, KLA appears to be vaguely referring to every possible product line of every manufacturer that may use a KLA ellipsometer. Under the circumstances, there is no actual case or definite and concrete controversy over which the Court can exercise jurisdiction.

KLA cannot shift the burden to Fujitsu on these issues or allege that it needs discovery. Although it is no longer necessary after *MedImmune* to allege a "reasonable apprehension of imminent suit," the *QRG* court's analysis remains instructive as to how the DJ plaintiff bears the burden to tie the

controversy to specific potential infringements and that a DJ plaintiff is not entitled to conduct a discovery fishing expedition:

> ... QRG is [] prohibited from relying on discovery as a fishing expedition to identify a reasonable apprehension of infringement with respect to specific products. QRG maintains that "from the very beginning, [it] has tried to get Nartron to identify the patent(s) and product(s) at issue" (Doc. 58 at 7), but it is QRG's burden to identify where the reasonable apprehension of suit lies in order to establish the court's jurisdiction over the claims made in its declaratory judgment complaint.
>
> ... QRG has had ample time to produce any other documentation that would otherwise identify specific products that create a reasonable apprehension of an infringement suit. Accordingly, the court will limit the instant litigation to QRG's QProx E2SR, QT110, QT113, QT9701, and QT1106 products. Because Nartron's November 27, 2001 letter referenced all five of the patents that have been named here, the court will permit all of them to remain within the scope of the litigation.

*QRG, Ltd. v. Nartron Corp.*, 2007 WL 2234511, *4-*5 (M.D. Pa. 2007).

In the present situation, KLA cannot carry its burden of showing how its complaint identifies potential infringements for which it may seek a declaratory judgment of non-infringement. KLA does not specify whether it is seeking a declaratory judgment as to the Nanya products, to Inotera products, or to any other particular products made by any of its customers. Indeed, KLA is refusing to provide any discovery relating to products made by Inotera or its other customers. Accordingly, *QRG* is directly on point and requires dismissal of KLA's complaint with prejudice.

### 2. In The Alternative, KLA Should Be Required to Identify the Potential Infringements in a More Definite Statement

As a less preferable alternative, the Court should require KLA to identify the specific potential infringements in a more definite statement. When a complaint "is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading", the responding party may move for a more definite statement. Fed. R. Civ. P. 12(e). In patent infringement cases, such a motion for more definite statement or a motion to dismiss is granted when the complaint fails to specifically identify the alleged infringing products. *See Hewlett-Packard Co. v. Intergraph Corp.*, No. C 03-2517, 2003 WL 23884794 (N.D. Cal. 2003) (granting motion to dismiss where complaint failed to identify any particular product and instead alleged only that defendant "sell[s] infringing software and hardware products").

The *QRG* court was only willing to exert DJ jurisdiction over specifically identified products. *Id.*. at *1, *3 ("The only surviving claims are those involving the five named patents and QRG's QProx E2SR, QT110, QT113, QT9701, and QT1106 products. ... [T]he court's identification of specific products at issue in the instant litigation will apply to Nartron's counterclaim, as well as to QRG's declaratory judgment action.")   Similarly, in *Comp. Docking Station Corp. v. Dell Inc.*, the court limited its consideration of a summary judgment motion in a DJ case to only the specifically identified products because of doubt regarding subject matter jurisdiction over products that the DJ plaintiff failed to identify.   No. 06-C-0032-C, 2007 WL 5117465, *1 (W.D. Wis Jan. 11, 2007).

Accordingly, any more definite statement must at minimum identify specific customers and their specific products for which DJ is sought.

### C. KLA Has Not Engaged in, or Prepared to Engage in, Any Activity Alleged to Be an Infringement

#### 1. KLA Has Not Alleged that Its Activities Constitute a Alleged Direct Infringement of the '486 Patent

An entity that carries out the steps recited in a method claim, such as the claims in the '486 patent, is a direct infringer.   *See NTP, Inc. v. Research In Motion, LTD.*, 418 F.3d 1282, 1318 (Fed Cir. 2005)).   It is also a direct infringement of a method claim to import into the United States a product manufactured using the patented method.   *See* 35 U.S.C. § 271(g).   On the other hand, the manufacture or sale of an apparatus capable of carrying out an accused method is not a direct infringement of a method claim.   *Mendenhall v. Cedarapids, Inc.*, 5 F.3d 1557, 1579 (Fed. Cir. 1993).   As noted above, the claims of the '486 patent cover a method for measuring the lateral size of a structure on the surface of a semiconductor substrate. ('486 Patent, col. 13, line 60 – col. 14. line 65, Bruno Decl. Ex. A).   Accordingly, KLA's sale of a product, such as the SpectraCD, that, according to KLA, is capable of making such a lateral size measurement, does not directly infringe the '486 patent. Further, Fujitsu has never asserted that KLA directly infringes the '486 patent, *i.e.*, Fujitsu has never asserted that KLA itself measures structures formed on the surface of semiconductors in a manner that infringes the '486 patent.   In fact, in response to KLA's discovery requests, Fujitsu expressly admitted as much.   (Bruno Decl. Ex. J ("REQUEST FOR ADMISSION NO. 1: Admit that Fujitsu has not

accused KLA-Tencor of directly infringing any Asserted Claim in this case under 35 U.S.C. §271(a). RESPONSE: Admitted.))

### 2. KLA Has Not Alleged that Its Activities Constitute an Alleged Contributory Infringement of the '486 Patent

A party is liable for contributory infringement when it "sells within the United States ... a[n] ... apparatus for use in practicing a patented process, constituting a material part of the invention ... and not a staple article or commodity of commerce suitable for substantial noninfringing use". *AquaTex Indus., Inc. v. Techniche Solutions*, 419 F.3d 1374, 1380 n.** (Fed. Cir. 2005) (quoting 35 U.S.C. § 271(c)). Here, although KLA's SpectraCD device <u>may</u> be used by KLA's customers to infringe the '486 patent, the sale of the SpectraCD device by KLA does not appear to constitute a contributory infringement of the '486 patent because the SpectraCD device is apparently capable of substantial noninfringing uses. (*See* Bruno Decl. Ex. F - Ex. I). For example, as noted above, the SpectraCD may measure the thickness of thin-films used to manufacture semiconductors. (SpectraCD Product Page, Bruno Decl. Ex. E). Additional examples of non-infringing uses of the SpectraCD device are set forth above. (*See* Bruno Decl. Decl. Ex. F - Ex. I).

### 3. KLA Has Not Alleged that Its Activities Could Constitute an Alleged Infringement of the '486 Patent by Inducement

A party is liable for inducing infringement when it "knowingly induced infringement and possessed specific intent to encourage another's infringement." *ACCO Brands, Inc. v. ABA Locks Mfrs. Co., Ltd.*, 501 F.3d 1307, 1312 (Fed. Cir. 2007) (quoting *Minn. Mining & Mfg. Co. v. Chemque, Inc.,* 303 F.3d 1294, 1304-05 (Fed. Cir. 2002)). *See also* 35 U.S.C. § 271(b). "Specific intent requires a showing that the alleged infringer's actions induced infringing acts and that he knew or should have known his actions would induce actual infringements." *Id.* (internal quotations omitted). Fujitsu has never asserted that KLA has induced anyone to carry out the steps of the '486 patent, or that KLA had a specific intent to induce infringement of the '486 patent. Further, KLA has not alleged that it has to date conducted such activities.

### 4. Because KLA Has Not Engaged in, or Prepared to Engage in, Any Activity Alleged to Be an Infringement, Its Declaratory Judgment Claim Must Be Dismissed

As demonstrated above, KLA has not alleged, much less demonstrated, that <u>its</u> activities, as opposed to its customers' activities, constitute "meaningful preparation to conduct <u>potentially infringing activity</u>. . ." as required for DJ jurisdiction. *Cat Tech* at *7. KLA appears to be the supplier of a tool that may or may not be used to infringe, as determined by its individual customers. KLA has not alleged any activity <u>by KLA</u> that could be either a direct infringement, a contributory infringement, or inducement of infringement of the '486 patent. As such, KLA has not satisfied the requirements for DJ jurisdiction and its complaint must be dismissed with prejudice. *See id.* at *6-7.

### 5. In the Alternative, KLA Should Be Required To Identify the Potential Basis for Liability for Each Potentially Infringing Product

As a less preferred alternative, KLA should be required to identify the specific activity alleged to be a potential infringement, including the specific grounds of potential liability that are at issue (i.e., direct infringement, induced infringement, contributory infringement, indemnity), with respect to each product for which KLA seeks a DJ of non-infringement. This means KLA should be required to identify:

(a) what specific acts by KLA at issue may potentially constitute direct infringement under 35 U.S.C. § 271(a) or (g);

(b) what specific acts by KLA at issue may potentially constitute inducement of infringement under 35 U.S.C. § 271(b), and what specific acts by its customers at issue may constitute the related direct infringement of its customers under 35 U.S.C. § 271(a) or (g);

(c) what specific acts by KLA at issue may potentially constitute contributory infringement under 35 U.S.C. § 271(b), and what specific acts by its customers at issue may constitute the related direct infringement of its customers under 35 U.S.C. § 271(a) or (g); and

(d) any other specific basis for potential liability, including specific indemnity agreements.

-11-
**FUJITSU'S MOTION TO DISMISS KLA'S COMPLAINT FOR DECLARATORY JUDGMENT
AND, IN THE ALTERNATIVE, FOR A MORE DEFINITE STATEMENT**
4:08-CV-01254 (CW)

### D. Even If Dismissal Is Not Mandatory, the Court Should Exercise Its Discretion to Dismiss KLA's DJ Complaint

A district court is not required to exercise declaratory judgment jurisdiction, and "[t]he fact that a court *can* enter a declaratory judgment does not mean that it *should*." *Hewitt v. Helms*, 482 U.S. 755, 762 (1987) (emphasis in original). *MedImmune* has not changed this. As the Supreme Court recognized in *MedImmune*, the text of the Declaratory Judgment Act "has long been understood 'to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants.'" *MedImmune*, 127 S. Ct. 764, 776 (quoting *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995)); *see Cardinal Chem.*, 508 U.S. at 95, n.17 ; *Brillhart v. Excess Ins. Co. of America*, 316 U.S. 491, 494-96 (1942). District courts have discretion "in the first instance, because facts bearing on the usefulness of the declaratory judgment remedy, and the fitness of the case for resolution, are peculiarly within their grasp." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 289 (1995).

"If a district court's decision is consistent with the purposes of the Declaratory Judgment Act and considerations of wise judicial administration, it may exercise its discretion to dismiss (or stay) the case." *Sony Elecs., Inc. v. Guardian Media Techs., Ltd.*, 497 F.3d 1271, 1288 (Fed. Cir. 2007). For example, a court has "unique and substantial discretion" to decline declaratory judgment jurisdiction when proceeding to the merits "will serve no useful purpose." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287-89 (1995); *SanDisk Corp. v. STMicroelectronics, Inc.*, 480 F.3d 1372, 1383 (Fed. Cir. 2007); *EMC Corp. v. Norand Corp.*, 89 F.3d 807, 810 (Fed. Cir. 1996). The court's decision may be "based on a 'reasoned judgment whether the investment of time and resources will be worthwhile.'" *EMC Corp. v. Norand Corp.*, 89 F.3d 807, 814 (Fed. Cir. 1996) (quoting *Serco Servs. Co., L.P. v. Kelley Co., Inc.*, 51 F.3d 1037, 1039 (Fed. Cir. 1995). District courts may also consider equitable, prudential, and policy arguments when deciding whether to use their discretion to dismiss a claim. *MedImmune*, 127 S. Ct. at 777.

Here, these factors weigh in favor of exercising discretion to decline jurisdiction over KLA's DJ claims. KLA obviously sued Fujitsu for DJ as a reaction to Nanya's filing of a third-party complaint against KLA in the *Fujitsu v. Nanya* case. However, KLA's DJ complaint is unbounded by any particular customer or product, much less the products at issue in *Fujitsu v. Nanya*. The Supreme

Court has admonished that courts must exercise caution in entertaining declaratory relief actions where rulings are sought that would reach far beyond the particular case. *Pub. Serv. Com. v. Wycoff Co.*, 344 U.S. 237, 243, 73 S.Ct. 236, 97 L.Ed. 291 (1952).

The Court may also properly consider "whether the declaratory action is being sought merely for the purposes of procedural fencing." *Government Emples. Ins. Co. v. Dizol*, 133 F.3d 1220, 1225 n.5 (9th Cir. 1998) (quoting *American States Ins. Co. v. Kearns*, 15 F.3d 142, 145 (9th Cir. 1994) (J. Garth, concurring). Here, KLA seems to be pressing its separate DJ action as part of its bid to place its case on a separate, slower track than the *Fujitsu v. Nanya* case, despite the Court's order placing the two cases on the same track and providing an additional six months for KLA to conduct discovery. This is another factor weighing in favor of discretionary dismissal.

Under the circumstances, even if dismissal were not mandatory, the Court should exercise its discretion to dismiss KLA's DJ complaint with prejudice.

**IV. CONCLUSION**

Because KLA has not alleged that any activity it performs constitutes an alleged infringement of the '486 patent, it has no basis for a DJ claim against Fujitsu and its DJ claims must be dismissed. Accordingly, Fujitsu respectfully requests that this Court dismiss KLA's Complaint with prejudice including its declaratory judgment claims of invalidity and noninfringement of the '486 patent.

Respectfully submitted,

Dated: July 1, 2008   By: _____

MILBANK, TWEED, HADLEY & MCCLOY LLP
Mark C. Scarsi (SBN 183926)
Chris L. Holm (SBN 249388)
601 South Figueroa Street, 30th Floor
Los Angeles, CA   90017-5735
Telephone:   (213) 892-4000
Facsimile:   (212) 822-5796
F-N-wg@milbank.com

*Attorneys for Defendants*
FUJITSU LIMITED and FUJITSU
MICROELECTRONICS AMERICA, INC.


MILBANK, TWEED, HADLEY & MCCLOY LLP
Christopher E. Chalsen
Michael M. Murray
Lawrence T. Kass
1 Chase Manhattan Plaza
New York, NY   10005
Telephone:   (212) 530-5000
Facsimile:   (212) 822-5796
F-N-wg@milbank.com

*Of Counsel for Defendants*
FUJITSU LIMITED and FUJITSU
MICROELECTRONICS AMERICA, INC.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

| | |
|---|---|
| KLA-Tencor Corporation,<br><br>*Plaintiff*,<br><br>-against-<br><br>FUJITSU LIMITED and<br>FUJITSU MICROELECTRONICS<br>AMERICA, INC.<br><br>*Defendants*. | Case No.   4:08-CV-01254 (CW)<br><br>**[PROPOSED]**<br>**ORDER DISMISSING COMPLAINT OF KLA-TENCOR CORPORATION FOR DECLARATORY JUDGMENT** |

Having considered the arguments in support and in opposition to Defendants' Motion to Dismiss, the court has determined it should exercise its discretion to dismiss KLA-Tencor Corporation's complaint for declaratory judgment filed on March 4, 2008 with prejudice.

IT IS HEREBY ORDERED that Defendants' Motion to Dismiss is hereby granted and KLA Tencor Corporation's declaratory judgment claims are dismissed with prejudice.

IT IS SO ORDERED.


Dated:  _____           _____
                                  HONORABLE CLAUDIA WILKEN
                                  UNITED STATES DISTRICT JUDGE

**[PROPOSED] ORDER DISMISSING COMPLAINT OF KLA-TENCOR CORPORATION
FOR DECLARATORY JUDGMENT** 04:08-CV-01254 (CW)